Emmett J. Schnepp, J.
The Department of Environmental Conservation, Region 8 of the State of New York, approved plans of the Town of Arcadia in Wayne County for a sanitary landfill on its 170-acre parcel of land, known as the Lada Farm. The Regional Director of the New York State Health Department approved the establishment of this refuse disposal area, known as the Town of Arcadia Sanitary Landfill. These approvals were made pursuant to the State Sanitary Code and were subject, among other things, to the condition that the operation be conducted in conformance with the requirements of Part 19 of the code (10 NYCRR Part 19). The Village of Newark is located within the Town of Arcadia.
Plaintiffs, the owners of 67 acres of muck land adjoining the town parcel, upon a part of which it is proposed to operate this landfill, seek in this action to permanently enjoin the defendants from constructing and maintaining the landfill, and from creating what may become a nuisance. The orders of June 26, 1973 and July 24, 1973 of the Honorable Clarence H. Brisco temporarily restrained the defendants from maintaining the proposed landfill pending a determination of the issues at trial. The issues were joined, the action was granted a preference and tried before this court on September 4 through 10, 1973, and based upon the proofs and testimony, it is found as follows:
The 170 acres of land owned by the town are located on what is known geologically as a drumlin, which is described as a mounded deposit of soil left by glacial action, running generally in a northerly and southerly direction. The land falls steeply on the north slope, possesses a gentle slope on the south, and is a suitable site for landfill.
The muck land of the plaintiffs’ is devoted to the growing of celery and abuts the drumlin on the south and downhill side, *69 Plaintiff, John Pirrello, is a leading producer of celery which is sold in large quantities to the A & P, Campbell Soup Company and otherwise where high quality is a prime factor. Representatives .of the purchasers periodically inspect the crop to insure that the celery products are suitable for human consumption. The presence of foreign objects, such, as plastics or paper, in a celery stalk would be a sufficient reason to reject the product. The location of the landfill operation in close proximity to plaintiff’s land would require such large volume purchasers to inspect the celery crop at more frequent intervals. The total plans for the construction and operation of the proposed landfill, required by law to be followed, promise the likelihood that no contamination will result to plaintiff’s land or to the surface, subsurface or deep ground waters.
The upper layer of soil of this landfill site is permeable to a depth of from two to four feet. "Under this layer is a water table, and basal glacial till then extends to a -depth upwards of 60 feet. This glacial till" resulted from the moving ice of the glacier and is compacted, hardened, dense and impervious. Beneath this till is a layer of shale under which there is located ground water, described as aquifer and the source of artesian and well water. This .subsurface soil and water determination was based upon the scientific conclusion and interpretation of engineers and technical experts, including a qualified geologic consultant. These conclusions were based upon the known geologic features of drumlins, site examination, and upon tests of soil samples removed during two test borings of 15 and 30 feet, eight test pits dug to a depth of 7 to 8 feet and a water supply well sunk to a depth of 92 feet. While no guarantee can be made of the nature of the entire soil under this site, it does not appear that further borings would change these determinations or permit a more accurate interpretation of the subsurface conditions. The landfill operation itself is planned in two areas of the 170-acre parcel comprising a total of approximately 50 acres. The plan provides for the development of 25 acres initially, and, upon completing the fill in this area, operations are proposed to be continued on an adjoining 25-acre plot. The proposal will .serve refuse disposal purposes for the municipality for upwards of 20 years.
The plans for the landfill take into account the glacial nature of the soil and appropriate drainage is planned to isolate the landfill -site from the. flow of surface and subsurface waters. It is proposed to ditch the outside perimeter of both areas to intercept upgrade surface and shallow subsurface waters *70 to assure that any runoff of surface waters will not be directed toward the refuse fill and to prevent excess water from entering this fill .site and mixing with the refuse to form leachate. To deal with moisture or rain water which may contact the uncovered refuse, dikes or berms of low permeable earth bedded in till along the downgrade sites of the landfill area, and ditches cut into the till inside the dikes, are designed to serve as a protection against the easy migration of water outward from the fill area. The plan provides that the flow from the site be dispatched into a holding pond located outside the dike.
A continuous monthly and biannual program to make various standard tests of the surface and subsurface waters from enumerated sources on the site is required. The present quality of these waters has been established. The analyses of these samples will indicate the early stagés of any possible pollution of these waters, including the aquifer, and permit timely action to abate the cause of any contamination. Because of the glacial impermeable till under the top layer of soil, it is not probable that pollution can seep through this till to contaminate the aquifer.
Plaintiffs raise no substantial objections to the approved plan. They claim, however, that vermin, and the overland runoff of water, and the prospective failure to properly maintain and operate the landfill, create a dangerous condition, which may result in the contamination and pollution of his land and of the celery crop grown thereon and constitute a hazard thereto.
Plaintiffs’ concern that the landfill may not be maintained or operated as planned and that contamination may result from improper operation and human error is speculative. The operation is subject to continuing inspection by the Environmental Conservation Department (6 NYCRR Part 360) and the operation must comply with Part 19 of the State Sanitary Code. It is the official duty of the municipality and its officers to operate the landfill in a manner which will comply with these requirements and the condition on which the plan for the landfill was approved. There is a general presumption that no officer or person acting under an oath of office will do anything contrary to his official duty or omit anything which his official duty requires to be done. This presumption vanishes in the face of substantial evidence and the record here contains no such evidence.
The municipality is performing a governmental function (Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190; *71 City of Rochester v. Town of Rush, 67 Misc 2d 328), and without some proof showing the existence or creation of a nuisance, the court cannot enjoin this governmental unit from performing its obligation to preserve .the health and well-being of the community by making provision for the disposition of refuse and rubbish. Although the court has the power to restrain an activity where it is highly probable that it will lead to a nuisance, the probability here is uncertain and contingent, and the public health must take precedence over a speculative possibility that the operation may contaminate plaintiffs’ land and damage their property. The public interest must be balanced against private property rights under these circumstances and, in the interest of the general public welfare and the facts here, the town must be permitted to establish this landfill and leave plaintiffs to their remedy if in fact a nuisance does occur.
Accordingly it is found that plaintiffs have failed to sustain their burden of proof and the complaint is dismissed. However, the dismissal of this complaint may not be construed as legally inhibiting the plaintiffs from instituting an action in the future to abate any nuisance created by the operation or maintenance of the landfill or for damages resulting from any such nuisance or from the negligence of the town arising from this operation.
It is directed, that, in the event any of the monitoring tests of the ground or subsurface waters reflect any contamination, the results of such tests shall be forthwith disclosed and made available to the plaintiffs or their successors in interest.